Jason Carr appearing on behalf of appellant Darryl Walizer. 2260A is a relatively new congressional enactment. It is an untested product and is a defective statute. And why do I say that? Because of the questions, the innumerable questions about how this statute should be applied. What are the elements? Are those elements susceptible to a reasonable jury determination? Was it ever meant to be a substantive criminal offense? Was it meant to be a sentencing enhancement statute? There are so many questions about this statute. To begin with, in the pre-Apprendi world, Apprendi being a 2000 case, to be relatively clear that 2260A was meant to be a sentencing enhancement statute. It does not have any of the traditional elements of a substantive criminal offense. There's no actus reus. There's no mens rea. There is a attendant circumstance, which is the requirement to register, and there are a lot of questions about what that means, which I'll get to. And then there is the committed and enumerated offense involving a minor. Those are the two elements of the crime. Now the more troubling element and the one that the magistrate court and the district court adopting the report and recommendation of the magistrate judge found that the requirement to register, and the actual language being whoever being required by federal or other law to register as a sex offender, that first sentence of the statute, that key sentence, the magistrate judge found that to be a non-Apprendi fact, or in other words, it fits with... Well, hasn't the government basically conceded, are you talking about count two? I am. Okay, that... Has the government conceded that that probably needs to go back to the district court for trial? The government has conceded one one facet of my argument, and that is that the magistrate court made a mistake, or the district court, I should say, because he adopted the magistrate judge's report and recommendation. The district court made a mistake in finding that to be an Apprendi fact, or a non-Apprendi fact, excuse me, that it fit within the prior conviction exception, and the law bears that out, because... So I'm just trying to figure out, why are you spending time on that, if it looks like the government acknowledges that it needs to go back? It's a good question, because there is, the government would be, have a sound argument to come up and say, well, what's the case in controversy, and it is part of my job here to convince the court that there is unsettled questions about the statute, even in the light of that concession. You're spending a lot of time telling us what your job is, and I need you to tell us exactly what your point is on these, especially count two, because it looks like that's going to go back. Why aren't all the other issues regarding count two moot? Because there are still unanswered questions about how that statute will be applied upon the remand. Well, don't they need to be applied and then we review it? You want us to make a sort of a judgment on how they should be applied in premature? Your Honor, the answer is yes, but with a caveat, which is that there is, and I understand that there is sort of a, as I said, a case in controversy question here, but this is definitely something that is capable of repetition and evading review, and also it has more practical implications, because when it goes back, how are we going to apply the statute? Well, if you want to get to the mayor, I mean, he was a registered sex offender. That's a great, that's a good question. Who determined that? And how, he's a registered sex offender, if you look at the supplemental excerpt from record, page 109, you will see, and the government made a lot of this both on appeal and the district court, the practicalities of how he's required to register, how does it happen? There's no agency determination. There is no judicial review of the determination. The individual, as happened in this case, if you look at the form, walks into Metro and fills out a form, and when he fills out the form, because he's a layperson, he fills it out wrong. And why is he filled out wrong? For a variety of reasons, but one thing he lists is his Virginia conviction. When you get into the legal analysis, and it's an in-depth legal analysis, you will determine that the Virginia conviction is not a sex offense that requires him to register. He makes a mistake. And what's more, the government made a mistake, because they allege that as an offense requiring him to register in the indictment, in count two. So they, so how is the jury supposed to, how would the jury ever be able to make that kind of determination? Well, they're going to have to play that out, and then we'll see if they made a mistake at that point in time, but I don't think it's, your question, if this is, if that count is, and I believe the in the appropriate way, the judge couldn't make that determination. It had to be presented to a jury, but that needs to happen. If all these things play out the way you say, you know, the horror story plays out the way, you know, you anticipate, then I guess you'll have your day at a later time. I mean, you'll have it at the district court level, you'll have it at the appellate court level, if it doesn't come out the way you think it should. I would focus more of my time on count one. And your, I'll take that advice. The substantive, originally briefed issue on count one involves whether or not our Sixth Amendment right to confrontation cross-examination of the officer was in duly infringed upon by the district court, and the meat of this issue is found in the original volume one of the excerpt for record on pages 23 through 26. Now, it may seem on initial blush that what we are precluded from cross-examining agent Godwin on may not seem too significant, but it's important to, to, to take cognizance of the fact that in this trial, Detective Godwin was almost all the evidence, and I sat through this trial, and the first day of trial consisted of Godwin reading text, internet IM messages, and Yahoo messages into the record for about six hours. I mean, almost the overwhelming bulk of the evidence here is Godwin. Is Godwin credible? Is this a viable investigation? Everything centers on him. Agent Yates, the Immigration and Customs Enforcement agent, had only tangential involvement. I'm trying to figure out what is it you would have asked the detective, you're talking about that, right? That you weren't allowed to cross-examine him on the areas that you wanted to. Is that what you're...? Yes, Your Honor, but there's another aspect to it. Okay, what's the other aspect? We had a subpoena out to, uh, to the Immigration and Customs Enforcement agent to get him in to talk about other aspects of the investigation, so that it was the cross-examination and our ability to call another witness. But what would that have borne out? Well, what we would have argued to the jury, tried to bring the jury, is that this investigation that Godwin engaged in was not a robust, thorough, and complete investigation, because two local law enforcement agencies, after looking at the chats, declined to assist him with the investigation. Now, Godwin is a Garland, Texas Police Department local law enforcement official. He went to two other local law enforcement agencies, the Metro, Metropolitan Police Department... How is your client prejudged by that? I think it's going to be, uh, not, uh, perhaps not really relevant, and it's certainly not critical, uh, to your, to your client. I'm trying to figure out what the relevance was in the district court. I'm trying to figure out how he erred by saying that, you know, a lot of what you were going to elicit really didn't bear on what the jury ultimately was going to have to decide. And I would submit, Your Honor, that the question you just asked, it evidences the same error the district court made, which is that, if you look at cases of Supreme Court cases like Hiles v. Whitley, they say that it is, it is a tried-and-true defense cross-examine tactic, pre-presentation of defense tactic, to ask questions that call into question law, the quality of law enforcement's investigation. That you are allowed to get into, did you do this, did you do that? The fact that a local law enforcement didn't want to, uh, because they'd never done it before, and wasn't sure about what they would even have to do, didn't want to participate or assist, when another ICE agent from that area, I think this was Nevada, ended up assisting, and then ultimately the North Las Vegas Police Department also did assist. How does that, I don't understand, what's the relevance of that? Well, two out of three agencies... So what? Casted a negative pronouncement. It's a jury question on what? On whether or not they didn't take the investigation because they, they had questions about the quality of the investigation, or whether they didn't take it because of other reasons, we're too busy, we don't want to deal with taxes. Those are all jury factual determinations. We should have been able to get into it in a cross-examination. The government on redirect could have tried to rehabilitate the witness. Well, wasn't it because of this or that? And, and this is all, these are all factual questions that we have a right to have the jury cogitate and make it determinational. Doesn't the district court have the ability and the authority and the discretion to determine what is confused, what might be confusing for the jury or questions that, and what might not be relevant for the jury? The district court does have that discretion, but we have to read between the line, under, we have to go underneath his, his ruling because his terse ruling doesn't explain why he wasn't doing it. Under Rule 403 of the Rules of Evidence, yes, he does have that discretion to say this would be cumulative or prejudicial or not relevant enough because it is relevant under the minimal standards of 401 relevancy. So 403 would be a basis to do it, but the court didn't explain that. So I want to just make sure I understand your, your argument because you're spending a lot of time on it, so you must think it's very important, that if you would have been able to show the jury that initially, you know, one law enforcement, local law enforcement didn't choose to participate or didn't know how to participate and another one may not have either, that would have been substantially relevant to your client's case. It would have furthered our ability to present a defense. And as the court noted, I mean, I have another issue and it segues nicely into that. Okay. But the other issue being that there was no substantial step or an attempt to violate the coercion and enticement statute. Now I would submit, and Judge Hawkins know this well because he offered the opinion in office, that the state of the law now seems to be this more abstract, did you, did you change this teenager or whoever you're talking to on the internet, did you change their mental state to assent? That there need be no proof that the person would actually ever engage in any unlawful sexual activity. Let's, let me understand, because I'd like to maybe get your view on then what would have been necessary, because this was a, your client was in talking to who he thought was a 14 year old girl over the internet, correct? Yes. Well, our defense was he always knew it was an adult, but yet the jury determined otherwise. Okay. And, and then had a string of communications with her that showed that he was interested in her and trying to get her to, to respond and to have perhaps a sexual type of relationship, and then coordinated the series of events so that when she said she was going to be coming to Las Vegas, he indicated to her that they could meet at the Las Vegas Airport and then came up with a plan to do so and actually showed up at the Las Vegas Airport and actually did, at the same time he thought she was going to be there to meet her. Is that all correct, more or less? No, your, I would, I would submit that the evidence does not establish that there was a plan to meet at the airport. That was a spontaneous intervention by a wall-eiser, and in fact, it kind of threw the investigation off. There was a series of emails saying, I'm gonna be there to visit an aunt or an uncle. He responds. He said, we can do this. I mean, this was all on email. It wasn't, and she lived somewhere else. He lived in Las Vegas. You're saying that was spontaneous? Well, the plan to come to Vegas was all the officer's initiation, and there was no concrete, there was some talk about we should plan to go to a movie, maybe we should see this movie, but there was no concrete plan as to where to meet, no rendezvous point, and no sexual activity could have occurred at the airport. In fact, if you look at the record on that... And I guess I wonder... He says, I probably won't even be able to talk to you or see you. I'm just gonna go there, and I mean, I will see you, not meet you or talk to you. Okay, and so you're saying because there wasn't any sexual activity at the airport, that... There could not have been. Okay, therefore it wasn't an attempt to coerce this girl. Not enough of a substantial step to be one. Okay, what would have been required? Some, under the Gladys case, they talk about either, it doesn't have to be the travels, not the sine qua non, they say, but there has to be something other than chats and impressions and inchoate plans. There has to be something concrete to meet the substantial step prong. And one thing I'd like to say, real fast, is that, you know, there are other... Federal courts don't have this concept, but other jurisdictions have the concept of solicitation, which is this idea of just convincing somebody to commit a crime in abstract. And really what the case, case laws seem to have done is turn coercion and enticement into a last 20 seconds for rebuttal, if I may. Sure. Good morning, Your Honor. Good morning. May it please the Court, Camille Dam for the United States. As the Court has pointed out, the government did concede the issue of count two and agrees that it needs to go back for a jury determination. As it relates, and I think the two issues that remain before the Court were both with respect to the 2422B offense of coercion and enticement. I guess I'd like to start with the sufficiency of the evidence, because I disagree with some things specifically that counsel said. As Your Honors have pointed out, there was initial chat. The initial... And the chats, while alone, generally are not enough to constitute a substantial step, they're still a factor. And combined with the other things that occurred, the chats were very graphic, very specific. Walliser brought up the topic of sex, and did she like older men, and what had she done, and what would she do, and what would she like to do, and what could he teach her to do. All of those things he brought up continually throughout the very, very early in the first conversation it arose. And it continued on through the ten or twelve online chats. And then a plan was devised, and there was a plan set, and that began on February 23rd, 2010. That's when Alicia said, Alicia, I'm referring to the agent, said that she and her mother would be coming to Las Vegas on March 12th, which was during her spring break. At that time they decided, they started to plan to meet at a theater. By the time of the travel day, they had planned to meet at a theater. In fact, the planning was so specific, they had identified Avatar as the movie, because of its length, and it would give them plenty of time. The 1240 showing on Monday afternoon, that she would be dropped off there by her mother, to the point that they had even planned what she would be wearing, and Wellizer had approved of it as a very sexy outfit. Then, that was not able to occur, because Wellizer then decided to come and see her at the airport, which required the arrest to take place at the airport. But that was an actual step he took, of traveling to the airport to see her. And I disagree with defense counsel that it wasn't, that no sexual act could take place. Although she was with her mother, and her uncle was supposed to be picking them up, he came with a specific intent of telling her he would try to see her if he could get the chance, if she could get a loan, a baggage claim. And his specific words, I'd like to get the chance to grab that ass. And he also said, so don't freak when I grab your ass. I want to slide my hand in them. And I submit that that is an intent to commit a sexual act. And she said, okay. And the defendant said, love you, see you tonight. So that was an arrangement to me. That was a plan. And I think the evidence is abundant and beyond what's necessary under Getsky and Hofus, and the cases from this circuit. And I, you know, the court is aware of the standard of review, and I don't need to go over Jackson versus Virginia, but other than just to say, we don't have to preclude every reasonable hypothesis other than guilt. But just to show that if you draw the inferences in favor of the verdict, a reasonable jury could find a substantial step. And I think that's clear. What about the issue of not allowing cross examination or bringing on witnesses of other local law enforcement agencies who chose not to participate in this, in the sting, actually, in the arrest of Mr. Walitzer? I think the district court, in exercise of one of its core functions of making that type of determination, made the correct determination that the if you look at the factors under Coring, the first one is relevance. In this case, the proffered reason for the cross examination was totally speculative. There was nothing offered of a defect in the prosecution that would be brought out by the witness. Mr. Carr had said it would have . . . Well, arguably, wasn't that what he was trying to do? Well . . . Is a defense attorney in a situation like that required to accept the agent's statement that I conducted a thorough investigation? Well, if he wasn't going to accept the agent's statement, that's who he was going to question. I mean, he didn't . . . As I understand the drift of what the defense wanted to cross examine, it was Isn't it true that you took this bundle of facts to one or more different prosecution agencies and they found substantial defects in your investigation and refused to proceed further? There was no evidence. There was no good faith basis for saying, isn't it correct they found substantial defects and wouldn't take your case? And when the court asked counsel at the sidebar, are you going to ask him what they thought? And she said, well, I can ask him who he contacted. That was the best she could proffer, is that they could ask who he had contacted. So they wanted to get into the record that two other agencies had been contacted and declined to take over the lead on that given day and then be able to make the inference that they must not have thought that it was worth taking. It wasn't a proper thing to do. It wasn't relevant. Defense counsel herself said that Las Vegas Metropolitan Police Department had no task force agent. North Las Vegas had no agent that had done this type of case. This was the ICE agent calling on the day of the arrest to say, I need somebody, I need an agency that can drop everything right now and send agents to the airport. So it was a difficult situation anyway. In fact, the Las Vegas Metropolitan Police Department did appear at the airport and did make the arrest. I think the district court was well within its discretion in finding that it just wasn't relevant what a third party who did not participate in the investigation may or may not have thought about the case. This is totally different than Kyle's versus Whiteley, where evidence wasn't turned over to the prosecution and they wanted to ask specific agents about what they did or didn't do to prove a defect in the investigation. Not to have one agent try to get hearsay information from one agent as to what another agency may or may not have thought. It was totally irrelevant. The district court had ample reason to conclude that it would confuse the jury, that it would mislead them, it would confuse the issues, it was a waste of time and entirely collateral. And besides that, the jury did have sufficient information within which to judge Detective Godwin. They had extensive cross-examination on all other points. The judge allowed the full range of cross-examination, whatever defense counsel wanted. The majority of the credibility was not really an issue in this case, particularly the facts were not in dispute. It was what do we draw from the facts? And any error that that the court could find was harmless given the overwhelming evidence and the facts to which Godwin testified, which were uncontested. Based on that, Your Honor, I'll give you two minutes for your rebuttal. Thank you, Your Honor. I was gonna ask if I could have her time. Two minutes is more than I could ask for. Your Honor, I would like to make four points, mainly regarding the record. Regarding the rendezvous at the airport, first of all, the government didn't argue it today, but in their briefs they talked about, oh there are Metro officers at the airport, so that means that Metro was involved. The record establishes that those officers were at the airport because they worked there. They knew when arrest was gonna happen in the airport, that's why they were involved. On page 200 of the supplemental except for record regarding the meeting at the airport, the testimony was, I mean the chat that he sent to the undercover agent Godwin was, okay, I might be there to see you at the airport. Yeah, I won't come up to you, can't do that, but I can see you, okay. And that's trial transcript, page 361, supplemental excerpt 200. I know the 2268 issue, these issues perhaps I should have to bring again before the district court, but one thing I wanted perhaps to say here is that the Mendoza-Lopez issue, I wish I thought of it earlier. I argued it in my reply brief. That is an interesting issue in my estimation. If the court takes a look at that, it may be appropriate to order supplemental briefing on that issue. And that would be an issue that perhaps I would face on remand because the procedure that I'm asking for in that would be one that I may ask the district court for on the remand, which is a pretrial ability to look into the legality and propriety of the requirement to register element. And the government, if the court is interested in that issue, the government perhaps should be afforded a chance to file supplemental briefs on that because it is somewhat of a solicitation offense. The nature of coercion enticement, there's one final point I wanted to bring to the court and that is, as I noted in my supplemental brief, this court said that this statute is constitutional coercion enticement. It doesn't violate the First Amendment because it's not just about speech. In DINGA, DINGRA the case, I would submit that the law has changed and if this conviction is overturned, that decision may need to be re-examined. Thank you. Thank you. Thank you both. The case is submitted.
judges: Fletcher, Hawkins, Murguia